UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

DONALD A. LEHN,

    Plaintiff,

v.                                                                                               04-CV-3100

STEVEN C. BRYANT et al.,

### Order

Before the Court are the parties' motions for summary judgment (d/e's 76, 77). For the reasons below, the Court grants Defendants' motion in part. The motions are otherwise denied.

### *Summary Judgment Standard*

A party moving for summary judgment must show, from the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . ." that there is no genuine issue of material fact and that the "moving party is entitled to judgment as a matter of law. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);Fed. R. Civ. P.56©. This burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837. A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). However, Rule 56© "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Summary judgement is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgement must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994).

### *Undisputed Facts*

These facts are adopted essentially verbatim from Defendants' proposed facts, to the extent material and not disputed by Plaintiff.

1. In September 2002, Plaintiff filed a Petition for Declaratory Relief and Order for Replevin in the Circuit Court of the Fourth Judicial Circuit in Montgomery County, Illinois .

2. Plaintiff's replevin action in the Illinois Circuit Court involved the same books that are at issue in this case. Plaintiff asserts that other iron-on transfer books have also been denied him since the beginning of this lawsuit.

3. Plaintiff's replevin petition alleged the defendant "took and detained, and still wrongfully detains against plaintiff, 5 books valued at $17.40. Said books were reviewed and approved by the IDOC Central Publications Review Committee on May 23, 2002 [citation to attachments omitted]. The withholding of said publication is a violation of speech and property rights under the First and Fourteenth Amendments of the United States Constitution . . . ."

4. Defendants filed summary judgment in the replevin action, which was denied.

5. The State Court ultimately found in favor of the defendants, for reasons "stated on the record." However, this court has not been supplied with any transcripts from the replevin hearing, nor any written order. Thus, the grounds for dismissal of the replevin action are not in this record.

6. Plaintiff initially appealed the replevin decision, but then moved to withdraw the appeal, in part because he intended to pursue his First Amendment claim in this Court.

7. The duty to approve or disapprove publications is delegated to the Central Publications Review Committee which is overseen by the Office of Inmate Issues.

8. Director Walker delegates the duty to review inmates' grievances to the Administrative Review Board.

9. Plaintiff's cell was searched on May 12, 2003 and a ticket was written for contraband and unauthorized property by Defendant Greenwood.

10. When asked at deposition if Plaintiff knew whether Defendant Greenwood along with Defendant Price shook own his cell at the behest of Defendant Bryant as alleged, Plaintiff replied, "I think they have a little game they play with everyone in seg. They try to screw with everybody's property." (Lehn Deposition, p. 65, l. 16 - p. 66, l. 5).

11. Plaintiff does not think Count Five of his complaint (against Greenwood) is specifically about Plaintiff, but about all the inmates that go to segregation. (Lehn Deposition, p. 66, l. 22 - p. 67, l. 1).

12. Plaintiff stated that the officers treat all segregation inmates' property as if it was disposable. (Lehn Deposition, p. 66, l. 22 - p 67, l. 1).

13. Plaintiff admitted the treatment of his property was not necessarily because he filed the lawsuit, but because he went to segregation. (Lehn Deposition, p. 69, l. 3 - l. 10).

*Analysis*

I. Res Judicata

*Res Judicata* "prohibits a party from relitigating issues that could have been raised in an earlier action . . . (citations omitted), in contrast to collateral estoppel, which bars the resurrection of issues that were actually litigated and decided." *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 913 (7th Cir. 1993). "The *res judicata* effect of a prior state court judgment on a subsequent section 1983 actions is a matter of state law." *Rooding v. Peters*, 92 F.3d 578, 580 (7th Cir. 1996). "In Illinois, the doctrine of *res judicata* provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and as to them constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action. . . . *Id.* (citations omitted). *Res judicata* applies where: (1) a final judgment on the merits was rendered by a court of competent jurisdiction; (2) there is an identity of causes of action; and (3) there is an identity of parties or their privies. An exception to the *res judicata* rule exists if the plaintiff did not have a full and fair opportunity to litigate his claim in state court. . . ." *Licari v. City of Chicago,* 298 F.3d 664, 666-67 (7th Cir. 2002)(res judicata applied because plaintiff's due process claims could have been raised in state court action regarding disability benefits).

Here, it does appear that Plaintiff tried to assert the same constitutional arguments in his state replevin action as he does here, and that the state replevin action arose from the same alleged misconduct–the withholding of the books. However, it is not clear whether Plaintiff was actually able to litigate his First Amendment claim in the replevin action, or whether the state court issued a "final judgment on the merits." All this record shows is that the state court held a hearing and found for defendants. There is no transcript from the hearing or written order explaining the dismissal. Plaintiff asserts that the state court's ruling was not on the merits of Plaintiff's right to the books (First Amendment or otherwise), but instead on grounds of state immunity (that the suit must be brought in the Illinois Court of Claims) or mootness (because Plaintiff had been transferred to a different prison). Accordingly, the Court cannot conclude on the present record that Plaintiff's claims are barred by res judicata.

II. Retaliation claim against Defendant Greenwood

Liberally construed from prior pleadings, Plaintiff alleges that Defendant Greenwood wrote a false disciplinary report against him on May 12, 2003, in retaliation for Plaintiff's pending replevin action, and in retaliation for a letter Plaintiff had written to Governor Blagoevich. Greenwood's disciplinary report was written for unauthorized/excess property in Plaintiff's segregation cell.

It is clear from Plaintiff's deposition that his claim against Greenwood is not based on Greenwood's purported retaliatory motive, but rather on Greenwood's purported arbitrary and unfair handling of Plaintiff's property in segregation, a problem which Plaintiff testified was systemic for inmates in segregation. For example, an inmate's approved property that fits neatly into approved boxes in general population would be searched and replaced in a disheveled manner in segregation, so that the property would no longer fit into the boxes and was therefore deemed "excess."

While this treatment may be unfair and unnecessary, it does not form the basis of a retaliation claim. The court sees no reasonable inference that Greenwood's actions were motivated by retaliation for Plaintiff's replevin suit or his purported letter to Blagoevich. As the Court stated in its prior order on summary judgment, the timing is not suspicious–Plaintiff's debate with Warden Bryant about the books had been going on for over a year, and the replevin action had been going on for nearly eight months. Plaintiff's move to segregation, and the ensuing cell searches and property disruption that comes with segregation, followed on the heels of the discovery of Plaintiff's letter to the Illinois Attorney General, which called the Warden a "prick." The Court has already determined that Plaintiff's punishment for that letter did not violate Plaintiff's Constitutional rights. Plaintiff's segregation and its attendant indignities were part of that punishment--they were not motivated by retaliation for the exercise of any constitutionally-protected right to expression. Even if Plaintiff did have evidence that Greenwood was motivated in part by retaliation for Plaintiff's legitimate exercise of his First Amendment rights, there is no reasonable inference that the ticket would not have been written anyway. Accordingly, summary judgment will be granted to Greenwood.[1]

III. Defendant Walker

Plaintiff maintains that Walker is personally responsible because the controversy over the books is ongoing. He points out that Walker has been served with this lawsuit, and therefore must personally know about the wrongful withholding of the books. Yet if that argument prevailed, Walker would be personally responsible for every alleged ongoing constitutional violation simply by virtue of being named as a defendant in a lawsuit.

Plaintiff does not counter Defendants' proposed fact that the Central Publications Review Committee approves or disapproves publications, not Walker, or that it was Warden Bryant who ultimately decided the publications would not be allowed. Nor does Plaintiff dispute that Director Walker delegates the duty to review inmates' grievances to the Administrative Review Board. Under that scenario, Walker cannot be held personally responsible under 42 U.S.C. Section 1983. *Johnson v. Snyder*, 444 F.3d 579, 583-84 (7th Cir. 2006)(letters to Director "insufficient to create a genuine issue of material fact regarding personal responsibility of Director, where Director had delegated responsibility for reviewing grievances, and there was no evidence that Director had read letters).

However, Anderson's affidavit does not appear to be attached to the Defendants' motion for summary judgment. Thus, Walker will not be dismissed until Anderson's affidavit is filed, as well as an affidavit by Walker addressing his involvement (or lack thereof) in the denial of the publications.

IV. Final Pretrial Conference

---

[1] Plaintiff asserts in his response that Greenwood confiscated some legal documents important to his replevin action–but that goes to Plaintiff's access claim, which was already dismissed on summary judgment in a prior order.

The only claim remaining is Plaintiff's claim that the refusal to give him his five iron-on transfer pattern books violates his First Amendment rights.

Censorship of incoming publications must be "reasonably related to legitimate penological interests." *Thornburg v. Abbott*, 490 U.S. 401, 404 (1989), *quoting Turner v. Safley*, 482 U.S. 78, 89 (1987). Courts are not prison administrators and owe deference to prison officials' decisions. *Id.* Defendant Brant avers that the books were withheld because "iron-on transfers pose a security threat, as they can be used as symbols of security threat groups and can be used in tattooing the symbols . . ." (Bryant Aff. Para. 5). Defendant Bryant also avers that he had the authority, as Warden, to override the Central Review Publications' recommendation that the books be permitted.

Prison officials have a legitimate penological interest in preventing tattooing among inmates–the health and security of the inmates. Defendant Bryant avers this is why Plaintiff cannot have his books. If withholding those books is reasonably related to preventing tattooing, there is no First Amendment violation, even if the Central Publication Committee approved the books.

However, Plaintiff asserts that Bryant's proffered reason is pretextual, because other inmates are permitted similar books with patterns that can be used to make tattoos, as well as various items that make tattooing possible, such as sewing needles. Plaintiff also argues that the Central Publication Committee's approval of the books raises an inference that Defendants' proffered security reason is pretextual. Defendants do not address these points. Further, it is not clear if Defendants have a blanket rule against transfer pattern books, or whether it is being applied only to Plaintiff's books. The books themselves are not in the record and apparently can no longer be located.[2] In short, there is simply not enough information in the record to apply the *Turner* test, nor to determine whether qualified immunity applies. Accordingly, summary judgment will not be granted on this claim.

It is hard to fathom what money damages Plaintiff could recover beyond nominal damages ($1.00). Perhaps Plaintiff seeks only injunctive relief, but it appears the books can no longer be located (d/e 83). However, that would not necessarily moot a request for injunctive relief, if Plaintiff seeks to order the books again.

At the final pretrial conference, the parties should be prepared to address the personal responsibility of each remaining defendant, with regard to the withholding of Plaintiff's pattern publications.[3] The parties should also be prepared to address how proof of the content of the

---

[2]There may be copies of the cover title pages in this record, or copies of the sort of patterns the books contained. There may also be copies in the record of the replevin action that Defendants may access.

[3]Defendant Bryant was personally responsible, as he made the decision to override the Committee. The record is not clear on what the other Defendants did personally, other than to allow Bryant's decision to stand.

publications will proceed, in light of the apparent loss of the originals.[4]  Additionally, Plaintiff should also be prepared to explain the relief he seeks, in light of this order.

IT IS THEREFORE ORDERED:

1) Defendants' summary judgment motion is granted in part and denied in part (d/e 77). Summary judgment is granted in favor of Defendant Greenwood, who is terminated from this case.  Summary judgment will be granted to Defendant Walker upon the filing of the affidavits of Anderson and Walker as discussed above.  The affidavits are due before the final pretrial conference.  Defendants' summary judgment motion is otherwise denied.

2) Plaintiff's motion for summary judgment is denied (d/e 76).  Material factual disputes remain on the record, making summary judgment inappropriate.

Entered this 10th Day of April, 2007.

s\Harold A. Baker

HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE

---

[4] For example, by copy or stipulation.